UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **AUTOMATION GUARDING SYSTEMS, LLC,** | **2:21-CV-10221-TGB-APP** |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION** |
| vs. | **(ECF NO. 53)** |
| **INDUSTRIAL STEEL GUARDING, LLC, *et al.*,** | **AND PLAINTIFF'S MOTION TO STRIKE** |
| Defendants. | **(ECF NO. 54)** |

Before the Court is Defendants' Motion to Reconsider the Court's Order Granting Plaintiff's Motion for Partial Summary Judgment (ECF No. 53) and Plaintiff's Motion to Strike (ECF No. 54). For the reasons explained below, the motions will be **DENIED**.

## I.    Background

The facts giving rise to this case are set forth in the Court's summary judgment order, but a brief procedural overview is helpful.

Evis Kola and Andi Papa are former employees of the Plaintiff, Automation Guarding Systems LLC ("AGS"). After learning that Kola and Papa had represented themselves as resellers of AGS's products to its own customers, AGS sued them—and two companies they had created—in Macomb County Circuit Court, asserting several claims under Michigan law—including claims for common-law and statutory

1

conversion—and a violation of the Lanham Act, 15 U.S.C. § 1125(a). Separately, AGS also sued Kola and Papa in federal court for copyright infringement. After Kola and Papa removed the state case to federal court, the Court consolidated the two cases. (ECF No. 34.) Based on the parties' proposed discovery plan (ECF No. 9), the Court also entered a scheduling order, establishing deadlines and procedures governing the case. (ECF No. 37).

The scheduling order designated September 10, 2021 as the cutoff date for discovery and witness disclosure and established October 12, 2021 as the deadline for filing dispositive motions. (*Id.*) It noted the deadlines could be extended for good cause by timely submission of a proposed stipulation and order. (*Id.*)

The discovery cut-off date of September 10, 2021 expired with neither party requesting any extension. On October 12, 2021 AGS moved for summary judgment on its common-law and statutory conversion claims. (ECF No. 38.) Its motion included an affidavit and reports by Jeffrey Bagalis, a forensic accountant who audited AGS's financial records and concluded that Kola and Papa had taken $967,109 worth of its product but paid only for $66,105. (ECF No. 38-1, PageID.1210.)

AGS's motion was fully briefed in short order: Kola and Papa responded that they had a resale contract with ASG, so they could not be liable for conversion (*see* ECF No. 39); AGS replied that this response was implausible and contradicted Kola and Papa's prior sworn testimony that

they had acquired the products sold by their companies from sources other than AGS. AGS further raised concerns about the authenticity of certain evidence Kola and Papa had produced during discovery but did not include with their summary judgment response—namely, unauthenticated invoices, purportedly from third-party suppliers in China, that Kola and Papa had asserted were "proof" that their inventory came from non-AGS sources. (ECF No. 40, PageID.1978.)

On February 22, 2022, after summary judgment briefing was complete and over five months after the expert disclosure deadline had passed, Kola and Papa asked to designate a forensic accountant as a new expert witness. They asserted that the accountant they had previously attempted to retain for the case had abandoned it. (ECF No. 41.) The Court referred their request to Magistrate Judge Anthony P. Patti, who—after a hearing—denied it, concluding that Kola and Papa's delay in finding a new expert was inexcusable and unfairly prejudiced AGS. (*See* Text-only order of April 1, 2022; Hr'g Tr., ECF No. 50.)

On June 14, 2022, the Court held a hearing on the summary judgment motion. At the hearing, AGS renewed its concerns about the authenticity of Kola and Papa's evidence and sought to have "Exhibit D"—purportedly the total sales of one of their companies—excluded from consideration on grounds that it was not previously produced during discovery. More specifically, AGS told the Court that it had requested information about Kola and Papa's total sales but was told that no

relevant records existed. (Hr'ing Tr., ECF No. 51, PageID.2254-57.) It also noted that Kola and Papa testified during their depositions that they could no longer find or access any of their sales records.

As the hearing progressed, the Court sought to explore these allegations of possible misconduct. When the Court questioned defendants' counsel about the origins of "Exhibit D," counsel insisted that he had previously produced it but could not explain when or how it was created. (*Id.* at PageID.2258-60.) Concerned about the integrity of the proceedings, the Court indicated its intention to end the hearing but, when counsel for the defendants objected, the Court allowed the hearing to continue so that he could fully respond. (*Id.* at PageID.2261-71.) The Court then took the matter under advisement and, on August 22, 2022, issued an order granting AGS's motion and directing AGS to submit a memorandum itemizing the damages and attorneys' fees related to its conversion claims. (ECF No. 52.)

Kola and Papa moved for reconsideration of the Court's order (ECF No. 53), and AGS sought to strike their motion (ECF No. 54). Having considered the parties' positions, the Court will now resolve both motions.

## II.   Legal Standard

Under the Local Rules of the Eastern District of Michigan, motions to reconsider non-final orders must be filed within 14 days of the order challenged and may only be brought on only the following grounds:

(a) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

(b) An intervening change in controlling law warrants a different outcome; or

(c) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

L.R. 7.1(h)(2).

Motions to strike, meanwhile, are governed by Civil Rule 12(f) and can be used to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## III.   Analysis

### A. Motion for Reconsideration

Defendants contend that the Court made three mistakes warranting reversal of the summary judgment order.

First, defendants assert that the Court erred in refusing to allow them to belatedly designate a new expert witness. (ECF No. 53, PageID.2306-07.) Although they acknowledge that courts commonly exclude expert witnesses when a party fails to comply with discovery deadlines, they urge that their failure to do so was justified because they could not have anticipated that the expert they wanted to retain would abandon the case. (ECF No. 51, PageID.2306-08.)

As an initial matter, defendants here are seeking reconsideration of Magistrate Judge Patti's order denying their request to designate a

new expert. That decision was rendered orally by Judge Patti at a hearing on April 1, 2022. Local Rule 7.1(h)(2) requires parties to file motions for reconsideration concerning non-final orders within 14 days of the entry of the relevant order. Defendants' motion to reconsider this order was not filed until September 2, 2022. It is some four and half months late.

And even if defendants' challenge were timely, the Court would deny it. The materials before the Court show conflicting representations about whether defendants ever formally retained their "missing" expert in the first place. (*Compare* Mot. for Reconsideration, ECF No. 53, PageID.2308 (representing that "expert witness accepted the retention and did zero work on this matter—leaving [defendants] stranded") *with* Email Ex., ECF No. 46, PageID.2177 (advising that expert "was not formally retained for this matter, however we did anticipate retaining him and discussed the case with him before he became nonresponsive") *and* Hr'ing Tr., ECF No. 51, 25:22-23 (representing that "we had an expert retained to contest [plaintiff's forensic accountant's] report, unfortunately, that expert has failed to respond")).

As Judge Patti noted, defendants waited over five months after discovery closed and several months after AGS's summary judgment motion was fully briefed to bring their expert issues to the Court's attention. Counsel was unable to explain this delay and conceded there were signs of a communication breakdown with their expert as early as

January 2021. (Hr'g Tr., ECF No. 50, 8:23-13:6.) The Court agrees with Judge Patti that such a substantial delay under the circumstances is inexcusable. His conclusion that allowing a new expert to enter proceedings so late in the game would unfairly prejudice and unduly prolong proceedings was a reasonable exercise of discretion, not a mistake. *See, e.g.*, *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 755 (6th Cir. 2003) (no abuse of discretion in disregarding affidavit by undisclosed expert filed three months after last discovery deadline).

Defendants' second ground for reconsideration does not relate to the substance of the Court's order, but rather centers on an allegation by counsel that the manner in which the Court conducted the summary judgment hearing shows that it was prejudiced against Defendants. (ECF No. 53, PageID.2308-10.) Under 28 U.S.C. § 455, federal judges must disqualify themselves from proceedings where their "impartiality might reasonably be questioned" or where they have "personal bias or prejudice concerning a party." Prejudice in this context means "a favorable or unfavorable disposition … that is somehow *wrongful* or *inappropriate*, either because it rests upon knowledge that the subject ought not possess … or because it is excessive in degree." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (emphasis in original) (internal quotations omitted).

According to the defendants, the Court committed a clear error and may have violated Federal Judicial Canons by "obstruct[ing]" their efforts to present their position while allowing AGS to argue "essentially

unfettered." (ECF No. 53, PageID.2300, 2308.) They highlight the Court's comments that it was concerned oral argument would not lead to any "progress," as well as the Court's urging to counsel near the end of the hearing to "wrap [it] up" because it had "heard enough." (*Id.*)

The Court has substantial discretion over whether and how to allow oral argument. L.R. 7.1(f)(2). As the Sixth Circuit has recognized, the "primary purpose of oral argument is for the judge to ask questions." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996); *see also Fed. Com. Commc'n v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276 (1949) ("[T]he right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations.") Here, as the hearing unfolded, the Court expressed concerns about the proceedings and nearly called them to a halt after AGS challenged the authenticity of the evidence presented by defendants and defendants' counsel was unable to clearly explain the provenance of "Exhibit D," the sales tabulation he submitted to oppose summary judgment. Nonetheless, the Court allowed counsel to explain his position.

The Court's concerns were not limited to the authenticity of "Exhibit D." AGS also accused Kola and Papa of producing unauthenticated, potentially fraudulent invoices from Chinese suppliers during discovery; counsel's only response was to state that that was "an attorney's argument unsupported by anything." (ECF No. 51, 20:13-16.)

AGS further noted that Kola and Papa had registered one of their companies to a non-existent address and represented that the company's key employees were foreign nationals, possibly located in Asia, whom they had never met and for whom they allegedly had no contact information—but who apparently shared Kola's cell phone number for a portion of her employment at AGS. (ECF No. 38, PageID.792, 794.) When the Court raised questions whether the identities of those employees were aliases for Kola and Papa and specifically asked counsel "as an officer of the court" if he knew whether the employees—"Lisa Hodges" and "David Walker"—were actually real people, counsel responded in a manner that attempted to mock the question: "No, your Honor. As an officer of the Court, I can't tell you that [AGS's owner] is a real person. I haven't met him and, you know, my associates did his dep." (ECF No. 51, 27:22-28:1.) In view of such conduct, the Court limited counsel from presenting further argument.

A judge's ordinary efforts at courtroom administration—including "expressions of impatience, dissatisfaction, annoyance, and even anger"—are not sufficient on their own to show a lack of impartiality. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *cf. United States v. Hickman*, 592 F.2d 931, 932 (6th Cir. 1979) (finding plain error where, in addition to other conduct, trial judge interrupted counsel 250 times during trial).  Having reviewed a transcript of the proceedings, the Court is satisfied that the hearing comported with due process and federal

ethical standards for the judiciary. Counsel would do well to recognize that the ethical rules at play in this situation are not the judicial canons pertaining to impartiality, but rather the duties articulated in the Rules of Professional Conduct for attorneys—in particular, Rule 3.3, Candor Toward the Tribunal.

Finally, defendants assert that the Court erred in entering judgment for AGS while "overtly" acknowledging the existence of factual issues over whether they had a resale contract with AGS. (ECF No. 53, PageID.2310-11.) They appear to argue that the Court improperly credited AGS's evidence over what they see as circumstantial evidence of a contract sufficient to allow a reasonable juror to conclude that they had a resale agreement.[1] (*Id.*)

Defendants misread the Court's order. The Court acknowledged that the parties' testimony conflicted over whether AGS "permitted" or "encouraged" defendants to try to resell their products. (ECF No. 52, PageID.2283.) As the Court explained, however, this issue did not create

---

[1] Defendants also submit a "new" exhibit—"Exhibit G," the unauthenticated invoices from non-party suppliers to one of their companies—and argue that it creates an additional fact question over whether their company sold AGS products or acquired inventory from other sources. (*Id.* at PageID.2305.) AGS submitted these records in their reply to defendants' response to its summary judgment motion. As the Court explained then, it did not consider these records because defendants did not adduce them in their response to the motion. (ECF No. 52, PageID.2288.) And it will not consider them now because defendants fail to explain why they did not submit them previously.

a *material* factual dispute: "permission" and "encouragement" to resell do not equate to the offer, acceptance, and consideration necessary to form a contract. (*Id.*) *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 831 (E.D. Mich. Aug. 26, 2014) (explaining that under Michigan law "[a] valid contract is formed when there are (1) parties competent to contract, (2) proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation" (citing *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. App. 1991)). Defendants presented no admissible evidence of these elements.

Defendants offer two additional arguments, but neither has merit. First, they suggest that the Court should have inferred the existence of a resale contract between them and AGS from the existence of resale agreements between AGS and other parties. (ECF No. 53, PageID.2303.) But the only evidence of any other reseller "agreement" in the record is testimony from AGS's owner that he was aware some of his customers resold the company's product after purchasing it. And the issue in this case is whether defendants *themselves* had a resale contract with AGS. Defendants presented no evidence of the terms of any such agreement, nor were they able to articulate what benefit AGS would have derived from allegedly allowing them to sell its product without being paid for it. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[I]f the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence

to support their claim than would otherwise be necessary.") (*See, e.g.,* Papa Depo., ECF No. 38-1, 51:9-12 (Q: "How would [the agreement] benefit Neil Wiebe's company for you to be on his payroll and also operating a separate company that sold his product? A: I'm not sure how it would benefit him."))

Second, defendants emphasize that AGS was "a company that had zero logs, records, or information concerning what their inventory … was." (ECF No. 53, PageID.2301.) But AGS provided an expert's analysis of financial records showing the value of the inventory defendants were alleged to have converted. That analysis, and the records attached to it, satisfied AGS's burden at the initial stage of summary judgment to present admissible evidence that Kola and Papa converted AGS's products. To defeat summary judgment, Kola and Papa needed to present affirmative evidence creating a material factual dispute over whether the products were actually stolen. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). They did not.

In sum, defendants point to no evidence the Court overlooked or failed to consider, nor do they identify a concrete legal error in the Court's analysis. The motion for reconsideration will thus be **DENIED**.

## B. Motion to Strike

Because the Court is denying the motion for reconsideration, AGS's motion to strike will also be **DENIED**. The Court notes that the motion is improper. Rule 12(f) permits a court to "strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion for reconsideration is not a pleading. *See* Fed. R. Civ. P. 7. To the extent AGS is concerned that defendants attempted to expand the summary judgment record, summary judgment proceedings have concluded.

## CONCLUSION

For the reasons explained above, Defendants' Motion for Reconsideration is **DENIED**. AGS's Motion to Strike is also **DENIED**.

**SO ORDERED** this 16th day of November, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge